# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| Jose Gonzalez-Tablada | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| AT&T, Franklin Collection Services, | ) |
| and Trans Union, LLC, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

1. This is an action brought by the Plaintiff, Jose Gonzalez-Tablada, for actual and statutory damages, attorney's fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA") and Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*, (hereinafter "FDCPA").  The Plaintiff also seeks compensatory and punitive damages for the Defendants' violations of Alabama's common laws set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. §1331, §1332, and §1367.  Venue is proper in that the Defendants transacted business here, and the Plaintiff resides here.

## PARTIES

3. The Plaintiff, Jose Gonzalez-Tablada, is a resident and citizen of the State of Alabama, Madison County, and is over the age of twenty-one (21) years. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. §1692a(3).

4. Defendant, AT&T, Inc., is a Delaware corporation with its principal place of business at 175 East Houston Street, San Antonio, Texas 78205. AT&T, Inc. can be served with process through its registered agent for service of process, CT Corporation Systems, 350 North St. Paul Street, Dallas, Texas 75201. Defendant AT&T was in all respects and at all times relevant herein doing business in the state of Alabama.

5. Defendant Franklin Collection Services, Inc. is a Mississippi corporation with its principal place of business at 2978 West Jackson Street, Tupelo, Mississippi. Franklin Collection Services, Inc. may be served with process through its registered agent for service of process, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109. In all respects and at all times relevant herein, Franklin Collection Services (FCS) was doing business in the State of Alabama. Defendant is engaged in the business of collecting consumer debts from consumers residing in Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

6. Defendant Trans Union LLC ("Trans Union") is a Delaware corporation registered to do business in Alabama with the Alabama Secretary of State. Defendant Trans Union may be served with process through its registered agent for service of process, Prentice-Hall Corporation System Inc., 150 South Perry Street, Montgomery, Alabama 36104. Defendant Trans Union was in all respects and at all times relevant herein doing business in the state of Alabama.

## FACTUAL ALLEGATIONS

7. On or about February, 2004, Defendant AT&T, f/k/a BellSouth, contacted the Plaintiff regarding a change to his telephone service. AT&T represented that it would provide the same services the Plaintiff was receiving through a different carrier for $66.25 per month total for two lines.

8. In reliance upon Defendant AT&T's representations, the Plaintiff agreed to switch his telephone service provider to AT&T. However, after his service was changed, multiple billing problems arose and the Plaintiff began receiving two bills for the lines instead of one.

9. The Plaintiff repeatedly contacted AT&T to discuss the problems with the billing, to no avail. On or about May 17, 2004, the Plaintiff paid both bills, one in the amount of $100.18 for account 8807575; and $97.09 for account 4893072. The Plaintiff received confirmation numbers for both payments.

10. On or about May 21, 2004, the Plaintiff switched his telephone service back to his previous provider.

11. On or about May 28, 2004, the Plaintiff received another bill for account 4893072 in the amount of $44.98.

12. On or about June 16, 2004, the Plaintiff sent a letter to Defendant AT&T requesting that they stop sending him bills for something he does not owe. Specifically, the Plaintiff informed Defendant that he had been doubled billed and that he disputed owing AT&T any further amounts.

13. From June 20, 2004 through July 31, 2004, the Plaintiff received three bills on account 8807575 and two bills on 4893072. On or about August 10, 2004, the Plaintiff spoke with Mrs. Mason in the Nashville office regarding his account and the fact that he was continuing to receive double bills for services that had been discontinued. Mrs. Mason was to contact the Plaintiff back with a final solution.

14. On or about August 23, 2004, the Plaintiff received a "final" bill on 8807575 for $53.90. Just a few days later the Plaintiff received a bill on 4893072 for $181.59. On September 8, 2004, the Plaintiff spoke with Ms. Sanford at AT&T and then a Mrs. Kirk informed the Plaintiff that she was working on removing the amount due from his accounts.

15. On or about September 24, 2004, the Plaintiff again spoke with several

individuals at AT&T regarding his accounts. During this conversation, Mr. Dowdy in customer service informed the Plaintiff that he needed to wait for a final bill before disputing the account.

16. On or about September 28, 2004, the Plaintiff received a bill on account 4893072 for $6.08. On October 11, 2004, the Plaintiff sent his letter of dispute regarding the charge along with a summary of events.

17. On October 22, 2004, the Plaintiff received his first collection letter from Defendant FCS. The Plaintiff called Defendant FCS on November 3, 2004, and specifically disputed the charge to FCS.

18. Despite the Plaintiff's dispute to Defendant FCS, FCS continued to contact the Plaintiff in an effort to collect a debt. On or about November 21, 2004, FCS sent a second letter to the Plaintiff. Plaintiff immediately responded by emailing FCS that he disputed any charges claimed by AT&T.

19. On or about December 30, 2004, FCS sent a third letter to the Plaintiff. Again the Plaintiff responded by sending a letter to FCS stating that he did not owe the debt and that he was not going to pay the debt.

20. On or about June 3, 2005, the Plaintiff received a telephone call from FCS. During this conversation, the Plaintiff again explained that he did not owe the debt. In addition, the Plaintiff sent a certified letter to FCS stating that he did not owe the debt claimed by AT&T.

21. FCS continued its efforts to collect the debt until October 2006 when Defendant AT&T sent the account to a new collection agency, Credit Bureau Collection Services, Inc.

22. In February 2008, the Plaintiff received a telephone call from AT&T offering him a less expensive home phone package. During this conversation the caller reviewed AT&T's computer database and came back and stated that the Plaintiff owed AT&T $53.90. The Plaintiff explained to the caller that he did not owe that money and the call ended.

23. A few days later the Plaintiff received a letter from AT&T indicating that AT&T had declined the Plaintiff's business due to an outstanding debt.

24. On or about March 9, 2008, the Plaintiff sent another letter to AT&T setting out why he did not owe this alleged debt.

25. Ten days after sending his dispute letter to AT&T, the Plaintiff received a collection notice from AFNI, Inc., regarding the AT&T account. On or about March 29, 2008, the Plaintiff sent a certified letter to AFNI stating he disputed the debt and was not going to pay the account.

26. On or about March 11, 2008, the Plaintiff obtained a copy of his Trans Union credit report. Therein, Defendant FCS was reporting a collection account from AT&T as outstanding.

27. On or about May 17, 2008, the Plaintiff sent a certified letter to Trans Union

disputing the reporting of the FCS account. The Plaintiff also sent a certified letter to Defendant AT&T continuing to dispute the alleged amount owed.

28. On or about May 21, 2008, the Plaintiff received a letter from TransUnion acknowledging receipt of the Plaintiff's letter. Thereafter, on or about May 24, 2008, Trans Union forwarded the Plaintiff a credit report for Jose A. Gonzalez-Tablada, Jr., social security ending 1099, which was not the Plaintiff.

29. On June 4, 2008, the Plaintiff received his certified letter to AT&T back with the envelope marked refused. On or about June 6, 2008, the Plaintiff sent the same letter certified mail to a new address for AT&T in Chicago. This letter was received by AT&T on or about June 17, 2008.

30. On or about June 22, 2008, the Plaintiff returned the incorrect credit report to Trans Union and requested they provide him the correct credit report.

31. On or about June 25, 2008, AT&T sent the Plaintiff a letter that it was informing AFNI, Inc. and the other collection agencies to stop all collection activity against the Plaintiff.

32. On or about July 1, 2008, Trans Union again sent the wrong credit report to the Plaintiff. On or about August 20, 2008, the Plaintiff sent a letter to Trans Union requesting his correct credit report.

33. On or about August 27, 2008, Trans Union responded to the Plaintiff's letter by stating that the disputed information does not appear on the Plaintiff's credit report. However, the Plaintiff's credit report was not included in this letter. Additionally, this representation by Trans Union was completely false.

34. On or about September 24, 2008, the Plaintiff requested copies of his Trans Union, Equifax and Experian credit reports and paid $30.50 for the reports.

35. On or about October 1, 2008, the Plaintiff received his TransUnion credit report which showed that FCS was continuing to report a collection account on the Plaintiff's credit report.

36. On or about October 16, 2008, the Plaintiff sent certified letters to both TransUnion and FCS disputing the FCS account reporting on his credit report.

37. Trans Union has since notified the Plaintiff that the FCS account has been deleted from his credit report, but Trans Union has refused to provide the Plaintiff a copy of said report so that this can be verified.

38. The Plaintiff has received nothing from FCS indicating that they have stopped reporting the account on his credit report.

## COUNT ONE
## FAIR CREDIT REPORTING ACT

39. The Plaintiff adopts the averments and allegations of paragraphs 7 through 38 hereinbefore as if fully set forth herein.

40. Defendant Trans Union maintains and distributes credit data files on the Plaintiff's credit.  Defendant Trans Union has negligently and willfully violated the provisions of the Fair Credit Reporting Act by failing and refusing to take steps to correct the Plaintiff's credit reports and by failing and refusing to follow reasonable procedures to assure maximum possible accuracy of the Plaintiff's credit file.

41. The Plaintiff further alleges that Defendant Trans Union repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.  Additionally, Defendant Trans Union negligently and willfully refused to provide the Plaintiff a copy of his credit file.

42. Due to Defendant Trans Union's negligent and willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

43. As a result of Defendant Trans Union's acts and omissions, the Plaintiff has suffered actual and compensatory damages.  The Plaintiff has suffered denials of credit, damage to his credit reputation, mental anxiety, emotional suffering, worry, humiliation and mental distress.  In addition, the Plaintiff

has incurred out of pocket expenses, litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant Trans Union alleged herein, would not have been necessary.  Further, Defendant Trans Union's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore Defendant Trans Union is liable to the Plaintiff for punitive damages.

## COUNT TWO
## FAIR CREDIT REPORTING ACT

44. The Plaintiff adopts the averments and allegations of paragraphs 7 through 43 hereinbefore as if fully set forth herein.

45. Defendant Trans Union's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires the Defendant to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file; and which requires the Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

46. Defendant Trans Union repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.  Additionally, Defendant Trans Union repeatedly sent the Plaintiff the wrong credit file.  Finally, although Defendant Trans Union represented to

Plaintiff that the disputed account had been removed from his credit report. The first time this statement was made it was completely false. Trans Union has made the same statement a second time and thereafter has failed and/or refused to provide the Plaintiff with proof of said representation.

47. Defendant Trans Union wrongfully refused to investigate the Plaintiff's subsequent disputes regarding the disputed account.

48. On more than one occasion the Plaintiff disputed the erroneous information contained on his credit report directly with Defendant Trans Union.

49. Despite the Plaintiff's repeated disputes and in direct violation of the FCRA, Trans Union failed to correct the inaccurate, erroneous, and malicious reporting on the Plaintiff's credit report.

50. On information and belief, the Plaintiff's Trans Union credit report presently contains erroneous, libelous, inaccurate, and adverse information. Defendant Trans Union continues to report adverse, erroneous and libelous information to third parties who access the Plaintiff's credit report.

## COUNT THREE
## FAIR DEBT COLLECTIONS PRACTICES ACT

51. The Plaintiff adopts the averments and allegations of paragraphs 7 through 50 hereinbefore as if fully set forth herein.

52. Defendant FCS has engaged in collection activities and practices in

violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff and his alleged consumer debts.

53. Defendant FCS has violated §1692e(8) during the past 12 months by communicating credit information about the Plaintiff which Defendant knew or should have known was false.

54. Defendant FCS violated §1692e(8) by failing to communicate to the credit reporting bureaus and other persons and/or entities that the Plaintiff's disputed debt was disputed.

55. In violation of 15 U.S.C. §1692g(b), after receiving written notification from the Plaintiff that the debt was disputed, Defendant failed to cease collection of the debt, or any disputed portion thereof.  Specifically, Defendant continued to report the disputed debt on the Plaintiff's credit reports in an effort to collect the debt.

56. As a proximate result of Defendant's actions, the Plaintiff was caused to suffer actual damages for damage to his credit and credit reputation, worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish.

## COUNT FOUR
## FAIR CREDIT REPORTING ACT

57. The Plaintiff adopts the averments and allegations of paragraphs 7 through

56 hereinbefore as if fully set forth herein.

58. Defendant FCS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

59. Defendant FCS violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

60. Defendant FCS violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to consumer reporting agencies.

61. Defendant FCS violated 15 U.S.C. §1681s-2(b)(2) by failing to complete all investigations, reviews, and reports required under §1681s-2(b)(1) within 30 days.

62. Defendant FCS violated 15 U.S.C. §1681s-2(b)(1)(c) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to consumer reporting agencies.

63. Defendant FCS violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Defendant's account was inaccurate, incomplete, false, and misleading.

## COUNT FIVE

## **DEFAMATION, LIBEL AND SLANDER**

64. The Plaintiff adopts the averments and allegations of paragraphs 7 through 63 hereinbefore as if fully set forth herein.

65. Defendants, AT&T, FCS and Trans Union, willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff to third parties and the public at large. Said statements subjected the Plaintiff to the denial of credit by third parties, harmed the Plaintiff's reputation, and caused the Plaintiff mental anguish and emotional distress. Additionally, Defendant AT&T's actions subjected the Plaintiff to ongoing collection efforts by debt collectors, including ongoing collection calls.

66. Said communications were false in that Plaintiff was not indebted to AT&T or FCS and Plaintiff did not owe any balance on said account. In fact, the Plaintiff's account had been paid and the service terminated.

67. Said false and defamatory statements have harmed the reputation of the Plaintiff and/or deterred third persons from associating with the Plaintiff.

68. Defendants communicated to third parties and the public at large false information concerning the Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning the Plaintiff.

69. At the time said communications were made, Defendants knew, or should

have known, the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

70. As a result of the intentional communication to the third parties of the false information, the Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public, and/or was subjected to ridicule.

71. Said communications were oral and written.

72. As a proximate consequence of said defamation, libel and slander, the Plaintiff was caused to endure collection activities and harassment by numerous debt collectors on behalf of Defendant AT&T, have negative credit reports, held up to public ridicule or shame, denied credit, and made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish for which he claims compensatory and punitive damages.

## COUNT SIX
## NEGLIGENT TRAINING AND SUPERVISION

73. The Plaintiff adopts the averments and allegations of paragraphs 7 through 72 hereinbefore as if fully set forth herein.

74. Defendants AT&T, FCS and Trans Union knew or should have known of its inadequate training and supervision. If Defendants had properly trained and

supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiff would not have occurred.

75. Defendants AT&T, FCS and Trans Union knew or should have known that the conduct of its employees, agents, and/or assigns was improper.

76. Defendants negligently failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

77. As a result of the Defendants' negligence, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT SEVEN
## RECKLESS AND WANTON TRAINING AND SUPERVISION

78. The Plaintiff adopts the averments and allegations of paragraphs 7 through 77 hereinbefore as if fully set forth herein.

79. Defendants AT&T, FCS and Trans Union knew or should have known of its inadequate training and supervision.  If Defendants had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiff would not have occurred.

80. Defendants knew or should have known that the conduct of its employees,

agents, and/or assigns was improper.

81. Defendants recklessly and wantonly failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

82. As a result of the Defendants' recklessness and wantonness, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendants AT&T, FCS and Trans Union for the following:

A. Declaratory judgment that Defendant FCS's conduct violated the FDCPA;

B. Actual damages for Defendant FCS's violations of the FDCPA;

C. Statutory damages of $1,000 for the Plaintiff pursuant to 15 U.S.C. §1692k;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k;

E. Actual damages from Defendant FCS pursuant to 15 U.S.C. § 1681n(a)(1)(A);

F. Punitive damages from Defendant FCS pursuant to 15 U.S.C. §1681n(a)(2);

G. Costs and reasonable attorney's fees from Defendant FCS pursuant to

       15 U.S.C. §1681n(a)(3);

H.    Compensatory and punitive damages from Defendant Trans Union for its violations of the FCRA;

I.    Actual damages from Defendant Trans Union pursuant to 15 U.S.C. § 1681n(a)(1)(A);

J.    Costs and reasonable attorney's fees from Defendant Trans Union pursuant to 15 U.S.C. §1681n(a)(3);

K.    Compensatory and punitive damages in excess of the jurisdictional requirements of this Court, from Defendants AT&T, FCS and Trans Union on Plaintiff's State law claims in an amount to be determined by a jury; and

L.    For such other and further relief as the Court may deem just and proper.

                /s/ Penny Hays Cauley
                Penny Hays Cauley
                Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

/s/ Ronald C. Sykstus
Ronald C. Sykstus

**OF COUNSEL**:
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL 35801
(256) 539-9899
(256) 539-9895 Facsimile
rsykstus@bondnbotes.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**
AT&T, Inc.
c/o CT Corporation Systems
350 North St. Paul Street
Dallas, TX 75201

Franklin Collection Services, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109.

Trans Union, LLC
c/o Prentice-Hall Corporation System Inc.
150 South Perry Street
Montgomery, AL 36104